UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| MARCUS HAMILTON, WINTHROP EATON, MICHAEL PERRY, on their behalf, and on behalf of a class of similarly situated prisoners,<br><br>*Plaintiffs,*<br><br>-against-<br><br>DARREL VANNOY, Warden of Angola; BURL CAIN, former Warden of Angola; JAMES CRUZE, Warden of Death Row; LESLIE DUPONT, Deputy Warden of Security; and JAMES LEBLANC, Secretary of the Louisiana Department of Public Safety Corrections,<br><br>*Defendants.* | CIVIL ACTION<br><br>No.: 3:17-cv-00194-SDD-RLB<br><br>JUDGE: SHELLY D. DICK<br><br>MAGISTRATE JUDGE: RICHARD L. BOURGEOIS |

## SETTLEMENT AGREEMENT

I.  **INTRODUCTION**

   A.  <u>Parties</u>. The Named Plaintiffs are Marcus Hamilton, Winthrop ("Earl") Eaton, and Michael Perry. They are three people sentenced to death and housed at the Louisiana State Penitentiary ("Angola") and held in the custody of the Louisiana Department of Public Safety and Corrections ("LDOC"). On March 23, 2020, the Court appointed Keith Nordyke as Guardian ad Litem for Plaintiff Michael Perry. The Named Plaintiffs seek to represent all current and future men sentenced to death and in the custody of the LDOC (the "Class" or "Class Members"). Defendants are the state officials responsible for the Class Members' conditions of confinement, both past and present.

   B.  <u>Purpose</u>. The purpose of this Settlement Agreement ("Agreement") is to settle the above-captioned case. The Plaintiffs and Defendants (collectively "the Parties") believe that this Agreement is fair, reasonable, and adequate to protect the interests of all parties.

   C.  <u>Conditions of Confinement at the Time of Filing</u>. Plaintiffs filed this action on March 29, 2017. In the Complaint, Plaintiffs alleged that, based solely on their sentence, the Class Members were subjected to long-term solitary confinement in violation of the Eighth Amendment prohibition on Cruel and Unusual Punishment.

1

Further, Plaintiffs alleged that the Class Members had no opportunity to challenge their placement in solitary confinement and were thus denied Due Process under the Fourteenth Amendment. At the time, Defendants had a policy of automatically and permanently placing all people sentenced to death in isolation for twenty-three hours per day. Men on Death Row were individually allowed outdoors in chain-link enclosures, by themselves, for one-hour periods, three times per week. At the time of filing, approximately seventy men at Angola were sentenced to death and thus automatically subjected to those conditions. Nearly eighty percent of them had lived in those conditions for over ten years. Defendants maintain that the conditions of confinement on Death Row have never violated any provisions of the United States Constitution.

D. Current Conditions. In the summer of 2016, Louisiana State Penitentiary began considering modifying the conditions of confinement throughout the entire facility, including Death Row. That same summer, prison staff attended the Managing Restrictive Housing Populations training hosted by the National Institute of Corrections. In December of 2016, the Vera Institute of Justice ("Vera") and LDOC each issued a press release announcing that the LDOC had been selected to participate in Vera's Safe Alternatives to Segregation Initiative, specifically aimed at reduction of the use of restrictive housing. In May of 2017, the Defendants began allowing the Class Members out of their cells and onto their tiers with all of the other men who live on their tiers ("Tier Time") for four hours per day, two hours in the morning and two hours in the afternoon, seven days per week. The Defendants later began allowing all of the men on each tier to go outdoors together ("Yard Time") for two-hour periods, twice per week. In addition, the Defendants made several other changes to the conditions of confinement on Death Row.

E. Class Certification. The Parties agree that this matter is appropriate as a class action pursuant to Fed. R. Civ. P. 23(b)(2). The Parties agree to jointly request that the Court certify a class defined as all current and future men sentenced to death and in the custody of the LDOC. The Parties agree that the Class is so numerous that joinder of all members is impracticable, there are questions of law and fact common to the Class, and the Named Plaintiffs and their counsel will fairly and adequately protect the interests of the Class. The Parties agree that the conditions of confinement—and the changes to the conditions of confinement—that are the subject of this action, apply generally to the Class, making relief appropriate for the Class as a whole. The Parties agree that in the event that the Court declines to certify the Class, this Agreement shall be void. Defendants agree that they shall not move to decertify the Class for the duration of this Agreement and shall not unreasonably oppose the designation of new Named Plaintiffs as necessary.

F. <u>Preliminary and Final Approval of this Agreement</u>. The Parties agree to jointly file this Agreement with the Court for approval pursuant to Rule 23(e) of the Federal Rules of Civil Procedure. Once the Court has granted preliminary approval of the Agreement and directed notice to the Class Members, the Court shall schedule a Fairness Hearing at which the Court shall consider the fairness, reasonableness, and adequacy of the Agreement. If the Court declines to approve this Agreement, this Agreement shall be void.

## II. SUBSTANTIVE TERMS

The Parties agree that the following terms shall be court-enforceable upon the entry of this Agreement as an order of the Court.

A. <u>Tier Time</u>. The Defendants shall provide each Class Member with at least four hours of congregate out-of-cell Tier Time each day—two hours in the morning, beginning no earlier than 7:00 a.m., and two hours in the afternoon—seven days per week. During congregate Tier Time, all Class Members housed on a tier are permitted to leave their cells and are given the opportunity to interact and socialize with the other Class Members housed on their tier. The Class Members shall also be permitted to shower, use the phone, and use JPay machines, or an alternative service that, at a minimum, provides all of the same functions currently provided by the JPay machines, which includes the ability to download emails and draft reply emails on their individual tablets. Class Members shall not be designated as on extended lockdown for the purposes of using the JPay machines or their alternatives.

B. <u>Evening Out-of-Cell Time</u>. The Defendants will continue to provide the Class Members with individual out-of-cell time after the evening shift change. The Warden or his designee may suspend evening out-of-cell time if doing so is necessary for the safety and security of Death Row or if issues related to inmate behavior require suspension. Nothing in this provision prevents Defendants from providing congregate evening out-of-cell time.

C. <u>Yard Time</u>. The Defendants shall provide each Class Member with at least five hours of congregate Yard Time per week, over the course of at least three separate days. Yard Time is to occur in the larger enclosed outdoor Death Row Yard area[1] rather than in the smaller enclosed outdoor spaces. During congregate Yard Time, all Class Members housed on a tier are permitted onto the yard where they may interact and socialize with the other Class Members housed on their tier.

D. <u>Yard Infrastructure</u>. The Defendants shall equip the yard with a basketball court with a hoop at each end, a fully-inflated basketball, three weight benches with

---

[1] The larger outdoor enclosed area mentioned in this paragraph refers to the area that was constructed after the filing of this lawsuit and then on July 2, 2019, further extended to include a grassy area.

3

barbells and sets of weight plates, and three dip bars. The yard fence shall be structured to capture a section of grass between the current yard and the Death Row complex. The section of grass accessible to Class Members will be approximately forty-eight feet by twenty feet.

E. Group Religious Worship. The Defendants shall provide the Class Members with opportunities for group religious worship at least once per week. Opportunities for group religious worship shall reflect the religious identifications of the Death Row population. Defendants shall continue to provide group Catholic services, group Nondenominational Christian services, and group Muslim services so long as there are Class Members who wish to participate. The Defendants shall offer Christian and Catholic services on Sunday, and Jumu'ah, the weekly congregational religious service for Muslims, on Fridays. The Jumu'ah services shall be held at or around noon, but before the individual prayer. Muslim Jumu'ah services shall be, to the extent possible, held with Class Members from the same tier worshiping in the same part of the yard together. At least one individual who leads Muslim prayer services will come to Death Row to lead Juum'ah services there. All services shall be approximately one hour. Modifications to this schedule or location may be made in the event of adverse weather. Nothing in this provision prevents the Defendants from offering more or longer group religious services. Nor does anything in this provision prevent the Defendants from offering religious services at which multiple tiers may congregate together in the Death Row Yard to worship.

F. Courses. The Defendants will continue to offer group General Education Development ("GED") classes, Thinking for a Change, and One Hundred Hours courses to the Class Members who have not yet completed these courses and who wish to participate. Defendants shall offer GED classes to all present and future persons assigned to Death Row who have not earned their GED or high school diploma.

The Defendants shall offer a variety of congregate courses and allow Class Members to choose their courses. The Defendants shall offer enough courses simultaneously to allow every Class Member the opportunity to be actively enrolled in at least one course. The Defendants acknowledge that the duration of the Class Members' sentences creates the need for new courses to be offered periodically as Class Members complete the current course offerings. Defendants shall implement new courses in order to provide Class Members with opportunities to take courses that they have not previously completed.

Courses shall be offered at times that do not overlap with congregate Tier Time or congregate Yard Time.

G. Work Opportunities. Defendants shall allow willing Class Members to clean the tiers, pack laundry, and perform multiple housekeeping chores.

H. Contact Visits. The Defendants shall provide the Class Members with the opportunity to have at least five social contact visits per year, with the opportunity

4

for additional contact visits at the discretion of the Warden.

I. <u>Non-Contact Visits</u>. The Defendants shall continue to provide the Class Members with the opportunity for unlimited non-contact visits.

J. <u>Communal Lunches</u>. The Defendants shall provide the Class Members with the opportunity to eat their lunches together with all of the other Class Members on their tiers ("Communal Lunches") no fewer than five days per week, and they are currently providing the Class Members with this opportunity seven days per week. These Communal Lunches shall last approximately one hour, separate and apart from Tier Time and Yard Time.

K. <u>Tier Representative Meetings</u>. The Defendants shall continue to hold weekly meetings with representatives from each tier to discuss the conditions of confinement on Death Row and any additional improvements that could be made.

L. <u>Additional Out-of-Cell Time and Programming</u>. Nothing in this Agreement shall prevent the Defendants from providing the Class with additional out-of-cell time or recreational, educational, vocational, or religious programming; nor shall this Agreement prevent the Defendants from providing additional visiting or other privileges to the Class Members.

M. <u>Suspension of Substantive Terms</u>. The Defendants may temporarily suspend a Class Member's privileges, as outlined in the substantive terms of this Agreement, on an individual basis, only if such a suspension is permitted by the LDOC's Disciplinary Rules and Procedures for Adult Offenders (20 August 2013).

III. **ADDITIONAL TERMS**

A. <u>Monitoring</u>. To ensure compliance with the Substantive Terms outlined in Section II of this Agreement, the Parties agree to the following terms concerning monitoring.

1. <u>Reporting</u>. For the duration of this Agreement, the Defendants shall provide the following to Plaintiffs' counsel on a monthly basis:

   a. A list of all alleged rule violations by any Class Member as well as the resulting dispositions and penalties, and, if Plaintiffs' counsel requests, a copy of the full report for any of those alleged rule violations; and

   b. Meeting minutes from the weekly Tier Representative meetings, which shall include all restrictions on Tier Time and all proposed changes to the course offerings, including the course title, course description, and if a commercially developed course, the name of the company that developed it.

2. <u>Disclosure of Material Changes</u>. The Defendants shall promptly inform

       Plaintiffs' counsel of any material changes to the conditions of confinement on Death Row, including all changes to any of the substantive terms laid out in Part II of this Settlement Agrement and to relevant Directives.

      3.    Defendants agree to provide notice to Plaintiffs' counsel once a change to a Directive is contemplated and will provide Plaintiffs' counsel with a copy of the notice or memo providing explanation for any such change. With regard to material changes that do not involve Directives, Defendants will provide notice of those changes in tier representative meeting minutes or other writing.

      4.    <u>Inspections</u>. Plaintiffs' counsel may conduct one inspection of Death Row per calendar year, starting with the date of this Agreement and ending when this Agreement is terminated, during which they shall be permitted to examine all aspects of Death Row and interview each consenting Class Member. The inspections, exclusive of the Class Member interviews, may last up to five hours. The inspections shall occur at a time to be agreed upon by the Parties and with at least sixty days' notice.

B.    <u>Enforcement</u>. If Plaintiffs believe that the Defendants have failed to comply with any material term of this Agreement, they shall notify the Defendants in writing of facts supporting their belief. The Defendants shall be afforded thirty days to confer, respond, and remedy the noncompliance.

Following the thirty day period for Defendants to respond and remedy the noncompliance, if Plaintiffs believe the noncompliance persists, the Parties shall meet and confer to resolve the issue(s).

If the Parties are unable to resolve the issue(s) satisfactorily, the Plaintiffs may notify the Court, and the Court shall appoint a Magistrate Judge to mediate the dispute. The Parties agree to make a good faith effort to resolve any dispute in mediation.

If the dispute has not been resolved through mediation in compliance with this Agreement within sixty days of beginning mediation, the Plaintiffs may file a motion with the Court seeking enforcement of this Agreement through all remedies provided by law. These timelines may be extended by joint agreement of the Parties.

C.    <u>Attorneys' Fees and Costs</u>. Plaintiffs have agreed to waive their demand for attorney's fees and costs.

D.    <u>Damages</u>. All Named Plaintiffs have agreed to release their monetary claims against Defendants.

E.    <u>Jurisdiction and Court Enforceability</u>. The Parties agree that the Court shall retain jurisdiction over this case to enforce this Agreement.

F.  Termination. Defendants may not move to terminate this Agreement and dismiss this case until they have substantially complied with this Agreement for a period of four years following the entry of this Agreement.

G.  Compliance with Federal Law. The Parties stipulate and jointly request that the Court find that the relief described in this Agreement is narrowly drawn, extends no further than necessary to correct the alleged violations of federal rights and is the least intrusive means necessary to correct the alleged violations of those federal rights and accordingly complies in all respects with 18 U.S.C. § 3626(a)(1)(A).

H.  Effective Date. This Agreement shall become effective on the date that it is entered as an order of the Court.

Dated: April 9, 2021

By: *[signature]*

Betsy R. Ginsberg, Esq. (*pro hac vice*)
CARDOZO CIVIL RIGHTS CLINIC
Benjamin N. Cardozo School of Law
55 5th Avenue, 11th Floor
New York, NY 10003
(212) 790-0871
betsy.ginsberg@yu.edu

*[signature]*

Pieter Van Tol, Esq. (*pro hac vice*)
Garima Malhotra, Esq. (*pro hac vice*)
HOGAN LOVELLS US LLP
390 Madison Avenue
New York, NY 10017
(212) 981-3000
(212) 981-3100 fax
pieter.vantol@hoganlovells.com
nicole.schiavo@hoganlovells.com
robin.muir@hoganlovells.com
garima.malhotra@hoganlovells.com

_____
Nicholas Trenticosta, Esq.
LSBA 18475
7100 Saint Charles Avenue
New Orleans, LA 70118
(504) 864-0700
(504) 864-0780
nicktr@bellsouth.net

*Counsel for Plaintiffs*

_____
Andrew Blanchfield, T.A. (#16812)
701 Main Street (70802)
Post Office Box 1151
Baton Rouge, Louisiana 70821
(225) 383-3796
(225) 343-9612
ablanchfield@keoghcox.com

*Counsel for Defendant*

8